Campbell, Appellant, *v.* National-Ben Franklin Fire Insurance Company.

Argued May 2, 1938. 

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*David R. Levin,* for appellant.

*W. W. Stoner* and *J. M. Stoner & Sons,* for appellee.

OPINION BY RHODES, J., July 15, 1938:

This is an action of assumpsit on policies of fire insurance covering furniture and dwelling located at 2212 Tustin Street, Pittsburgh, Pa., alleged to be the property of plaintiff. This case was previously before us on appeal, and is reported in 123 Pa. Superior Ct.

274, 187 A. 217. On the retrial plaintiff again obtained a verdict for the loss of the personal property, and the trial judge again directed a verdict for defendant for the loss due to the destruction of the dwelling. Plaintiff's motion for new trial was refused, and he has appealed.

The record before us is incomplete, as exhibits received in evidence, the admission of which is the subject of the fifth and eighth assignments of error, have not been incorporated in the printed record or in appellant's briefs. The brief of appellee contains a supplemental record wherein the deed, the admission of which is the subject of the fifth assignment of error, is printed. Appellant has clearly failed, in so far as the fifth and eighth assignments of error are concerned, to comply with rule 26 of this court. The eighth assignment of error, which complains of the admission of certain records, cannot be considered in the absence of the evidence alleged to have been erroneously admitted.

Appellant's position is so clearly untenable that separate discussion of each assignment of error is unnecessary. Besides, most of the assignments relate to the rulings of the trial judge relative to the admission or rejection of evidence, and are without merit.

The record discloses an unusual transaction, and the only question which warrants consideration is whether the evidence discloses such a violation of the insurance contract which appellant had with appellee as to justify the action of the trial judge in directing a verdict on the claim for loss due to the destruction of the dwelling.

The policy of insurance provided: "This entire policy shall be void, unless otherwise provided by agreement in writing added hereto,—(a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; or

...... (d) if any change other than by the death of the insured take place in the interest, title, or possession of the subject of insurance. ......"

Appellant procured the policy of insurance in question on November 17, 1930, on his dwelling at 2212 Tustin Street. The term of the policy was for three years beginning November 17, 1930. The dwelling was destroyed by fire on September 26, 1933. Appellant testified that he had continued to be the owner of the property down to the time of the trial. On cross-examination he admitted the execution and recording of a deed to J. A. Campbell for the property covered by the policy, and that he acknowledged the deed on April 13, 1933. He recorded it himself on the same day. Appellant's explanation was that he did not intend by this deed to effect a change of title to the property, but was prompted to put it in the name of J. A. Campbell, his uncle, because a creditor was annoying him. On this point he testified: "...... I came to the conclusion that I was going to have a judgment put against me, and I decided from my conversations with those different people, that if I were to transfer or change the name in which the property was in, that that would be the only way out of it, and if I did that, probably the man's Attorney would settle with him, and he would let me alone, and then I could put it back in my own name again. Q. Was that your intention? A. Yes, sir. ...... A. I did not convey the property to J. A. Campbell. I only used J. A. Campbell's name, who happens to be my uncle, I used his name for the purpose about which I have just spoken." Appellant testified further on cross-examination that he kept the deed and the policies covering the dwelling and a garage in his possession. Thereupon appellee drew from him the admission that the policy, covering the garage on the property, and the deed had been turned over to a finance company in connection with a

loan made to appellant's father. It appeared that on June 9, 1933, appellant's father executed a note to the finance company, and appellant also signed the note as "J. A. Campbell," testifying that he did so because the title was in the name of J. A. Campbell on the records, and that he had permission to use J. A. Campbell's name. Continuing the cross-examination appellee developed that appellant knew that an execution had been issued on the note, and that the property which he claimed was his had been levied upon as the property of J. A. Campbell. Despite this development he made no claim that the property belonged to him and not J. A. Campbell.

J. A. Campbell testified that he never had the above-mentioned deed in his possession; that he never had any interest in the property; and that he gave appellant permission to use his name. On cross-examination he said that he knew of the conveyance of the property to him and the purpose of it.

The deed was offered in evidence by appellee as part of the cross-examination, and admitted over appellant's objection. Objection to its admission was solely on the ground that delivery must be shown.

The conveyance by appellant to his uncle, J. A. Campbell, was without the knowledge or consent of appellee. Appellant's evidence disclosed that the deed was executed and recorded by agreement between appellant and his uncle to prevent a creditor of appellant from collecting a claim. Appellant signed his uncle's name to the note given to the Automobile Finance Company, whereby the loan was obtained on the strength of his uncle's title to the property. It is also significant that appellant turned over to the finance company the deed which he had executed conveying the property to J. A. Campbell. Such conduct was nothing short of a confirmation by appellant of the transfer of title by him. We are unable to grasp the subtlety of appellant's argu-

ment to the effect that appellant would have the right to adopt or assume any name he chose, even if the choice was identical with the name of his uncle.

The principal contention of appellant is that whether the condition in the policy against change of title was breached by appellant was a question for the jury, and that appellant should have a new trial to determine this question. There is no merit in this contention, and it cannot be sustained. Appellant admitted the execution and recording of the deed to his uncle, which covered the property destroyed by fire and insured by the policy in question. The policy contained no endorsement of such change of title, and the evidence discloses no notice to appellee of the transfer. Appellant does not allege that appellee waived clause (d) of the policy, or that it was estopped from asserting a defense thereunder. See *Kompa v. Franklin Fire Ins. Co.*, 28 Pa. Superior Ct. 425, 429. Appellant proceeds on the theory that he was at the time of the fire the owner of the premises notwithstanding the execution and recording of the deed. Appellant produced no evidence that he had title to the land and the dwelling thereon at the time of the fire, excepting his oral statement that he was the owner. The deed which he executed and recorded conclusively disclosed that the record title was vested in J. A. Campbell at the time. The deed was an absolute conveyance of the premises therein described, and contained a covenant of general warranty, with a $1 U. S. I. R. stamp attached.

"The parties made their own contract. Yet, in the face of the prohibition of any change in the title or interest in the property, the plaintiff executed a deed of conveyance, with covenant of warranty in the ordinary form, and duly acknowledged and recorded it. He thus absolutely parted with the legal title to the property, and, in so doing, violated the very letter of the condition of the policy, stipulating that there should

be no change in the title without the consent of the insurer. ...... The relation of insurer and insured was terminated when the condition was thus voluntarily broken by the act of the insured. It could not be restored without the express or implied consent of the insurer. No such consent was given": *Bemis v. Harborcreek Mut. Fire Ins. Co. of Erie,* 200 Pa. 340, at page 342, 49 A. 769. See *Glessner v. Neshannock Mut. Fire Ins. Co.,* 331 Pa. 439, 1 A. (2d) 233.

On this appeal it is contended on appellant's behalf (fifth assignment of error) that the trial judge erred in admitting the deed when offered by appellee during the cross-examination of appellant; that it was an improper attempt to establish the defense; and that the offer should have been rejected. As we have stated, this assignment violates our rule 26. Moreover, this was not the objection made by appellant at the trial when the deed was offered. But even if the deed were improperly admitted at the time, there is no dispute as to the fact of the deed, or as to its execution and recording. It made no material difference in this case when it was introduced. Cf. *Smith v. Standard Steel Car Co.,* 262 Pa. 550, 106 A. 102. With this documentary evidence before the trial judge, showing the title in another, there was no error in directing the jury to find for appellee on this part of appellant's claim. The instrument was unimpeached and conclusive written evidence (see *Dinan v. Supreme Council of the Catholic Mut. Ben. Ass'n,* 213 Pa. 489, 493, 62 A. 1067), showing a change of title within the meaning of the policy.

The object of the clause in question was to assure appellee that the title would remain as it stood when the policy was issued unless it consented to a change therein. It is reasonable to suppose that shifts in the title, especially between relatives and not constituting bona fide sales, might influence the attitude of appellee

towards the desirability of continuing the insurance because of the effect upon the moral risk involved. It is a matter of common knowledge that, in fire insurance especially, the moral risk is often a determining factor in the insurer's acceptance or rejection of an application.

The conveyance clearly constituted such a change in the title of the insured as, by the terms of the policy, to defeat a recovery for the loss upon the building. See *Chulek v. United States Fire Ins. Co.,* 30 Pa. Superior Ct. 435.

Assignments of error are overruled. Judgment is affirmed.